**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carrie Tavares,<br><br>            Plaintiff,<br><br>vs.<br><br>ASARCO LLC, et al.,<br><br>            Defendants. | No. CV-20-01596-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant ASARCO LLC's Motion for Summary Judgment (Doc. 39). For the following reasons, the Motion will be granted.[1]

**I.    BACKGROUND**

Plaintiff Carrie Tavares worked for Defendant ASARCO LLC at the ASARCO Ray Mine for almost ten years beginning in August 2011. (Doc. 1 at 2). In February 2020, a new Mine Manager began working at the Ray Mine. (Doc. 40 at 1–2; Doc. 46 at 2). At that time, Plaintiff was the only female employee at her level, chief supervisor. (Doc. 1 at 3). In March 2020, another employee reported to the Mine Manager that in November 2019, Plaintiff had been sleeping on the job or otherwise failing to perform her work duties. (Doc. 40 at 2; Doc. 46 at 2). The Mine Manager investigated the report, including by meeting with Plaintiff's direct supervisors on March 25, 2020. (Doc. 40 at

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

2–3; Doc. 46 at 2). The supervisors did not know if the report was true. (Doc. 40 at 3; Doc. 46 at 2). The Mine Manager then asked Plaintiff to join them in the meeting, which left Plaintiff upset and crying. (Doc. 40 at 3; Doc. 46 at 5). The Mine Manager concluded that although some of the allegations against Plaintiff were corroborated, there was not enough evidence to discipline her. (Doc. 40 at 3; Doc. 46 at 2).

At some unknown time,[2] the Mine Manager had a conversation with Plaintiff about "uncomfortable topics," including how he would go about discussing sex with his sister following their mother's death and questioning Plaintiff about her sex life. (Doc. 46 at 5). Plaintiff reported this conversation to Defendant's human resources department, which apparently took no action. (Doc. 46 at 5). In addition, the Mine Manager "would badger Plaintiff with questions and criticize her assigned duties." (Doc. 46 at 5). He asked her supervisors to consider who could replace her. (Doc. 46 at 5; Doc. 45-1 at 7).

On March 31, 2020, Plaintiff volunteered to work an overtime shift. (Doc. 40 at 4; Doc. 46 at 3). The Mine Manager required her to operate a haul truck during overtime shifts because it would increase production at the mine, which was in the midst of a labor strike, and because haul trucks tracked the operator's productivity. (Doc. 40 at 4; Doc. 46 at 3). Plaintiff became upset when she learned she would have to operate a haul truck. (Doc. 40 at 4–5; Doc. 46 at 3). She needed a refresher training before operating a haul truck, and no one was available to provide one. (Doc. 46 at 3, 6). She called her supervisor who told her that, "since she was upset and not in the right mindset to operate equipment," she could go home. (Doc. 40 at 5; Doc. 46 at 3). Plaintiff did not complete the March 31, 2020 overtime shift. (Doc. 40 at 5; Doc. 46 at 3).

The next day, on April 1, 2020, Plaintiff went on medical leave. (Doc. 40 at 5; Doc. 46 at 3). On September 16, 2020, she requested an accommodation to be able to lie down when she experienced panic attacks, to not operate any machinery, and to be placed

---

[2] The evidence in the record suggests that this occurred "somewhere around" February 2020. (Doc. 45-2 at 7). Plaintiff apparently has an aversion to providing dates, as her Statement of Facts repeatedly fails to note even a general time period of when certain events occurred, making it difficult to track the sequence of events.

2

in a low-stress environment. (Doc. 40 at 5; Doc. 46 at 3). Defendant could not accommodate all of her requests but would have allowed her to return to work without operating any equipment. (Doc. 40 at 6; Doc. 46 at 3). In November 2020, Plaintiff resigned from her job with Defendant, claiming constructive discharge. (Doc. 40 at 6; Doc. 46 at 4).

While on medical leave, on May 4, 2020, Plaintiff filed an administrative charge with the Arizona Civil Rights Division and the EEOC alleging discrimination and retaliation by Defendant. (Doc. 1 at 4). After receiving a right-to-sue notice, she filed a Complaint initiating this lawsuit on August 12, 2020, alleging discrimination and retaliation in violation of Title VII.[3] (Doc. 1).

On February 11, 2022, after completion of discovery, Defendant filed the instant Motion for Summary Judgment, which is now fully briefed. (Docs. 39, 45, 47). In addition, the parties filed supplemental briefing addressing specific issues as ordered by the Court. (Docs. 50, 51).

## II.   LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

///

---

[3] Plaintiff's Complaint named both ASARCO LLC and Grupo Mexico S.A. DE C.V. as Defendants, but she voluntarily dismissed the latter. (Doc. 14).

## III. DISCUSSION

Plaintiff alleges two counts against Defendant under Title VII: (1) gender discrimination and (2) retaliation. Although Plaintiff's Response to the Motion for Summary Judgment does make one reference to a "hostile work environment," her argument as to the discrimination claim uses only the framework for a disparate treatment claim. (Doc. 45 at 3). Because Plaintiff makes no argument that she has established a prima facie case of gender discrimination based on a hostile work environment theory, *see Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008), the Court will consider only the disparate treatment theory. The Court now addresses the two counts in turn.

### a. Gender Discrimination

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e–2(a)(1). To establish a prima facie sex discrimination claim, Plaintiff must show that (1) she belongs to a protected class, (2) she was qualified for the position, (3) she was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Defendant's Motion does not dispute that Plaintiff, a woman, is a member of a protected class, nor that Plaintiff was qualified for her position. (Doc. 39 at 8). At issue, then, are the third and fourth elements. As to the third element, an adverse employment action is defined as "one that materially affects the compensation, terms, conditions, or privileges of employment."[4] *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir.

---

[4] Plaintiff argues that the *Burlington Northern* definition of adverse employment actions as those that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" applies to a Title VII discrimination claim. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). But that case makes clear that that definition applies in the Title VII *retaliation* context, whereas the definition in the discrimination context is narrower. *See id.* ("[W]e conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond

2008) (internal quotation marks omitted). As to the fourth element, "individuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), as amended (Jan. 2, 2004)

Plaintiff argues that Defendant subjected her to several adverse employment actions: (1) the Mine Manager's "harsh and aggressive" manner toward Plaintiff, including an "office dressing-down"; (2) the Mine Manager's inquiry to her supervisors as to whether any employees were capable of replacing Plaintiff; (3) the assignment of Plaintiff to truck-hauling, production tasks; and (4) constructive discharge. (Doc. 45 at 7–8). The Court will address each alleged adverse employment action and whether it gives rise to a triable gender discrimination claim.

### i. Harsh and Aggressive Manner

First, Plaintiff alleges that the Mine Manager was harsh and aggressive towards her and that he was particularly hostile in the March 25, 2020 meeting where he questioned her about whether she had slept on the job. Title VII "does not set forth a general civility code for the American workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). Yelling at or otherwise using a harsh tone towards an employee is not an adverse employment action for the purposes of a discrimination claim. *See, e.g.*, *Johnson v. Chevron Corp.*, No. C 07-5756 SI, 2009 WL 1404699, at *11 (N.D. Cal. May 19, 2009) ("The three instances in which [a supervisor] purportedly yelled at plaintiff and her requests that he comply with work

---

workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards . . . that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called 'ultimate employment decisions.'").

The Court notes that this is not the only time that Plaintiff's Response cites the wrong law or applies the law in entirely the wrong manner. While the Court need not belabor the point by citing every instance, the Court kindly suggests that it would behoove counsel to spend more time researching the law and how it applies to the specific facts of the case rather than writing in broad, flowery platitudes.

To be sure, Defendant makes a similar error by applying the same adverse employment action analysis to the retaliation claim as to the discrimination claim, and Defendant's briefing is not a model of clarity, either.

processes do not rise to the level of adverse employment actions because these acts did not materially alter plaintiff's employment."); *Capristo v. Brennan*, No. C-15-1071 EMC, 2015 WL 4396268, at *4 (N.D. Cal. July 17, 2015) ("[Y]elling is akin to making a snide remark; it does not rise to the level of a termination or a substantive change in work responsibilities."); *see also Vasquez*, 349 F.3d at 643–44 (finding that a supervisor's conduct in yelling at an employee in front of others and making two offensive remarks to the employee was not severe or pervasive enough to create a hostile work environment). Likewise, "[t]he mere fact that [an employer] received and investigated allegations of misconduct" against an employee is not an adverse employment action. *Campbell v. Haw. Dep't of Educ.*, 892 F.3d 1005, 1013 (9th Cir. 2018). Thus, the Mine Manager questioning Plaintiff about alleged misconduct, "dressing her down," and otherwise treating her harshly is not an adverse employment action.

### ii. Threat of Replacement

Next, as to the Mine Manager's inquiry to Plaintiff's supervisors as to whether she could be replaced, "the mere threat of termination does not constitute an adverse employment action." *Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009) (holding that supervisor's desire to fire and criminally prosecute employee was not an adverse employment action when employee was not actually fired or prosecuted). Accordingly, the Mine Manager's questions are not actionable discrimination.

### iii. Assignment to Haul Truck

Third, as to Plaintiff being assigned to work a haul truck during a voluntary overtime shift, "assigning more, or more burdensome, work responsibilities, is an adverse employment action." *Davis*, 520 F.3d at 1089. The denial of opportunities to work overtime may also be an adverse employment action. *See Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847–48 (9th Cir. 2004). Here, Plaintiff has raised genuine issues of material fact as to whether her assignment to a haul truck was an adverse employment action. First, there is evidence to suggest that operating a haul truck was a more burdensome work responsibility because it was the only equipment that tracked the

operator's productivity. (Doc. 46 at 5–6). Second, there is some evidence that Plaintiff was required to operate a haul truck during overtime shifts, that she needed a refresher training before she could safely operate a haul truck during her March 31, 2020 shift, and that no one was available to provide such a training during that shift—effectively denying her the opportunity to work overtime. (Doc. 46 at 5–6). While Defendant presents evidence to the contrary, such conflicts are not for the Court to resolve at the summary judgment stage.[5]

Then, Plaintiff must present evidence that similarly situated men were treated more favorably than she was. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641 (citing *Wall v. Nat'l R.R. Passenger Corp.*, 718 F.2d 906, 909 (9th Cir.1983) (district court did not err in concluding that plaintiff failed to show he was treated less favorably than similarly situated employees because other employees had no disciplinary record)).[6] This does not require that employees be "identical; they must simply be similar in all material respects." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009) (quotation and citation omitted). And while "whether two employees are similarly situated is ordinarily a question of fact," summary judgment may be granted when the undisputed evidence shows material differences. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (citation omitted).

Here, it is undisputed that all of the other chief supervisors, all of whom were

---

[5] Defendant suggests at various points that the Court can resolve some of the factual conflicts because Plaintiff's evidence is self-serving. The Court cannot, however, "disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). Rather, the Court can resolve self-serving evidence "that states only conclusions and not facts that would be admissible evidence." *Id.* The Court finds that the relevant portions of Plaintiff's deposition testimony were fact-based rather than conclusory.

[6] Plaintiff incorrectly cites a later case, *Beck v. United Food and Commercial Workers Union, Local 99*, as advancing a different definition of "similarly situated" that excluded employee conduct. 506 F.3d 874 (9th Cir. 2007). In fact, *Beck* repeatedly states that employees must be similarly situated "in all material respects" and even cites favorably to *Vasquez*'s holding related to employee conduct. *Id.* at 885.

7

male, were assigned to operate shovels during overtime shifts. (Doc. 40 at 4; Doc. 46 at 3). Still, Defendant argues that there is no one similar to Plaintiff in all material respects because Plaintiff was the only employee who had been accused of sleeping on the job—a difference that is material because she was assigned to a haul truck at least in part because it would track her productivity. (Doc. 39 at 12–13; Doc. 40 at 4; Doc. 46 at 3, 6). Plaintiff concedes that the record does not contain any evidence that any other employee was accused of and investigated for such conduct. (Doc. 45 at 10). Instead, Plaintiff argues that the record shows that Defendant had disciplined other male chief supervisors by issuing a performance improvement plan for one and forcing another to resign. (Doc. 45 at 11). The record does not detail the conduct for which those supervisors were disciplined, which would be critical to determining whether they were similarly situated to Plaintiff. *See Vasquez*, 349 F.3d at 641. And if anything, Plaintiff's argument shows that she was disciplined *less* severely than her male colleagues were. While it may be true that Plaintiff need not show that another employee accused specifically of sleeping on the job was treated more favorably than her, there is no evidence in the record showing that anyone accused of an offense of the same type and severity was treated more favorably. *See Hawn*, 615 F.3d at 1157; *Vasquez*, 349 F.3d at 641. Accordingly, there is no genuine dispute of material fact on this element.

Defendant further points out that Plaintiff was not trained to operate a shovel, the equipment that all male chief supervisors operated during overtime shifts. (Doc. 39 at 5; Doc. 50 at 4). Indeed, Plaintiff's training records contain no indication of shovel training. (Doc. 50-2). Plaintiff disputes this, arguing that in her deposition, "Plaintiff states that she had experience working on a shovel." (Doc. 51 at 4). Not so. She cites to the following excerpt from her deposition, in which she was asked about changes to the day-to-day duties of chief supervisors:

> [W]hen the strike happened, we still held our titles, you know, but we were regular workers. We were on water trucks. We were on blades. We were on loaders. We were on shovels. We were – we were essentially the workers. We

>weren't the supervisors. Even though we still had our title, we were just workers. They turned our salary into hourly rate.

(Doc. 40-1 at 12). This evidence is insufficient to raise a genuine factual dispute as to whether Plaintiff was trained on a shovel, as it merely shows that during the labor strike, chief supervisors *in general* operated certain equipment, including shovels; Plaintiff does not state that *she* was trained on or had experience working a shovel. This is clearly a material difference between Plaintiff and the male chief supervisors given that all of the men operated shovels during their overtime shifts. In sum, the uncontradicted evidence shows at least two material differences between Plaintiff and her alleged comparators. Plaintiff has therefore failed to present sufficient evidence that Defendant treated any similarly situated men more favorably than her.

### iv.  Constructive Discharge

Finally, "[c]onstructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007) (internal quotation marks omitted). "In order to prevail, a plaintiff alleging a constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Id.* at 626 (internal quotation marks omitted). Summary judgment should be granted on a constructive discharge claim "where the decision to resign was unreasonable as a matter of law." *Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (internal quotation marks omitted).

Here, no reasonable jury could find "that a reasonable person in [Plaintiff's] position would have felt compelled to resign." *Id.* Plaintiff provides absolutely no explanation of how the circumstances in this case rise to the level of constructive discharge, instead making only conclusory assertions.[7] (*See* Doc. 45 at 7–9). The Court is

---

[7] The Court also notes that Plaintiff repeatedly cites case law from the Arizona state courts. Arizona law does not apply to her claims, which are made under federal law. (Doc. 45 at 7–8).

9

thus left to guess as to the basis for her constructive discharge argument. The Mine Manager's generally aggressive treatment of Plaintiff cannot be considered a "discriminatory" working condition because she admits that he "was known for his harsh language and generally mean demeanor." (Doc. 45 at 7). Nor, as discussed above, can Plaintiff show that her assignment to a haul truck was discriminatory. The only remaining basis that the Court sees for the constructive discharge claim is the Mine Manager's inappropriate conversation with Plaintiff about sex. However, "a single isolated incident is insufficient as a matter of law to support a finding of constructive discharge." *Wallace*, 479 F.3d at 626 (internal quotation marks omitted). Considering all possible circumstances, Plaintiff has not shown that she has a triable constructive discharge claim. *Cf. id.* (finding sufficient evidence to support a constructive discharge claim where the employer discriminatorily failed to consider the employee for promotions, imposed excessive disciplinary action, refused to approve military leave, threatened termination, and imposed a supplemental performance review, among other conduct).

In sum, Plaintiff has failed to present sufficient evidence to establish a prima facie case of gender discrimination with respect to any alleged adverse employment action by Defendant. Defendant is therefore entitled to judgment as a matter of law on the discrimination claim.

### b. Retaliation

"To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray*, 217 F.3d at 1240. Here, Plaintiff alleges that she made a report of sexual harassment to Defendant's human resources department after the "uncomfortable" sex-oriented conversation with the Mine Manager, and that her report was not taken seriously. (Doc. 45 at 3–4). Her report of sexual harassment is plainly a protected activity. Moreover, the Court will assume that the Mine Manager's generally harsh treatment of Plaintiff, his threats to replace her, and Plaintiff's assignment to the haul

1  truck all constitute adverse employment actions under the broader definition for
2  retaliation claims.[8] *See Burlington N.*, 548 U.S. at 68.

3  Still, as Defendant notes, Plaintiff has failed to present evidence establishing a
4  causal connection between her protected activity and the adverse employment actions.
5  *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) ("To show the requisite
6  causal link, the plaintiff must present evidence sufficient to raise the inference that her
7  protected activity was the likely reason for the adverse action."). Plaintiff presents no
8  evidence of *when* she made her report to human resources. *Cf. Davis*, 520 F.3d at 1094
9  ("We have held that causation can be inferred from timing alone where an adverse
10 employment action follows on the heels of protected activity." (internal quotation marks
11 omitted)). Nor does she present any evidence that anyone responsible for the purported
12 adverse employment actions had any knowledge of her complaint. *See Cohen*, 686 F.2d
13 at 796 ("Essential to a causal link is evidence that the employer was aware that the
14 plaintiff had engaged in the protected activity.") Nor does she present any other evidence
15 that would allow a reasonable jury to infer that her complaint to human resources was the
16 likely reason for the Mine Manager's conduct towards her—particularly given her own
17 acknowledgment that he was known generally for being mean and harsh. Accordingly,
18 there is no genuine dispute of material fact on that element, and Defendant has shown
19 that it is entitled to judgment as a matter of law on the retaliation claim.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///

---

[8] This is a particularly generous assumption given that Plaintiff's argument on her retaliation claim rests primarily on a patently erroneous assertion, found within a nearly indecipherable paragraph, that "Plaintiff does not have to have suffered adverse employment action for retaliation to be considered." (Doc. 45 at 13).

**IT IS THEREFORE ORDERED** that Defendant ASARCO LLC's Motion for Summary Judgment (Doc. 39) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment in favor of Defendant and **terminate** this action.

Dated this 1st day of June, 2022.

Honorable Steven P. Logan
United States District Judge